UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
DANIEL MCINTOSH,                       )
                                       )
            Plaintiff,                 )
                                       )        Civil Action No. 12-11815-NMG
v.                                     )
                                       )
LOCAL UNION 33, UNITED ROOFERS,        )
WATERPROOFERS AND ALLIED               )
WORKERS, et al.                        )
                                       )
            Defendants.                )
_____)

REPORT AND RECOMMENDATION
[Docket Nos. 8, 9, 12, 14, 16]

July 22, 2013

Boal, M.J.

        Pro se plaintiff Daniel McIntosh ("McIntosh" or "Plaintiff") alleges that the Local Union

33, United Roofers, Waterproofers and Allied Workers (the "Union") and Paul Bickford, Brian

Brousseau and Mike Foley (collectively, the "Defendants") breached the duty of fair

representation they owed him under the National Labor Relations Act.  He asserts, in essence,

that the Union did not make a good faith effort to find him work and bullied him over the course

of his membership.  Before the Court are McIntosh's motions to remand the case to state court,

objecting to removal, to amend the Complaint, and entering judgment in his favor.  Docket Nos.

8, 9, 14, 16.  The Defendants have moved to dismiss the Complaint.  Docket No. 12.[1]  For the

_____

        [1] The District Court referred the pending motions to the undersigned for a report a
recommendation on December 17, 2012.  Docket No. 18.

1

reasons discussed below, this Court recommends that the District Court grant McIntosh's motion

to amend the Complaint; deny McIntosh's motions to remand, objecting to removal, and entering

judgment in his favor; and grant the Defendants' motion to dismiss.

I.    PROCEDURAL HISTORY

      A.    McIntosh I

      On July 1, 2011, McIntosh filed a complaint against the Defendants in this Court.[2]  See

McIntosh v. Local 33 United Roofers, Waterproofers and Allied Workers, et al., No. 1:11-cv-

11182-NMG (D. Mass.) ("McIntosh I"), Docket No. 1.  McIntosh amended the Complaint on

January 3, 2012.  McIntosh I at Docket No. 8.

      On January 31, 2012, the Defendants moved to dismiss the Complaint.  Id. at Docket No.

13.  The District Court granted the motion on August 2, 2012.  Id. at Docket No. 16.  The

District Court found that McIntosh's fair representation claims were time barred.  Id.  The Court

also found that the Court lacked subject matter jurisdiction to entertain the pendant state law

claims for breach of contract, fraud, slander and negligence and dismissed those claims without

prejudice.  Id.

      McIntosh filed a notice of appeal on August 7, 2012.  McIntosh I at Docket No. 18.  On

August 23, 2012, McIntosh filed a motion "to withdraw the breach of contract from the appeal

process."  Id. at Docket No. 19.  On September 11, 2012, the District Court granted the motion.

Id. at Docket No. 22.

      On July 1, 2013, the U.S. Court of Appeals for the First Circuit affirmed the District

---

[2] In that complaint, McIntosh named Brian Brusso as a defendant.  In the complaint filed
in this case, he named Brian Brusseau.  It appears that this reference is to the same defendant but
the correct spelling of his last name is Brousseau.  See Docket No. 1 at 1 n. 1.

Court's decision.  Id. at Docket No. 24.  The First Circuit noted that nothing in its opinion "precludes plaintiff from pursuing claims for discriminatory conduct occurring subsequent to the actions alleged in his complaint."  Id.

      B.      This Action

On August 16, 2012, McIntosh filed his Complaint against the Defendants in Norfolk County Superior Court.  State Court Record, Docket No. 10, at 2, 30-40.  The allegations in the Complaint are almost identical to the allegations in McIntosh I.

Defendants removed the case to this Court on October 1, 2012.  Docket No. 1.  On October 15, 2012, McIntosh filed a motion to remand the case to state court.  Docket No. 8.  He also filed a motion to amend the Complaint.  Docket No. 9.  Defendants opposed the motion to remand on October 29, 2012.  Docket No. 11.  The Defendants did not oppose McIntosh's motion to amend the Complaint.

On October 29, 2012, the Defendants filed a motion to dismiss the Amended Complaint.  Docket No. 12.  McIntosh filed an opposition to the motion to dismiss on December 11, 2012.  Docket No. 17.  He also filed motions "objecting to removal" and "entering judgment in favor of the plaintiff."  Docket Nos. 14, 16.  Defendants filed an opposition to the motion "entering judgment in favor of the plaintiff" on December 26, 2012.  Docket No. 19.  On January 2, 2013, McIntosh filed a supplement to his opposition to Defendants' motion to dismiss.  Docket No. 20.

II.    <u>FACTS</u>[3]

The Amended Complaint is very difficult to understand.  It is set forth in narrative form, but with no logical connection from one paragraph to another.  As best as the Court can discern, McIntosh appears to be claiming that the Union did not make a good faith effort to find him work and bullied him over the course of his membership.

The Amended Complaint's heading states that McIntosh is bringing claims for breach of contract, breach of membership contract, negligence, gross negligence, bad faith administration, slander, discrimination in job referral, fraud, malice, defamation of character, and continued misconduct.  Interspersed among his allegations are also references to intentional infliction of emotional distress and discrimination.  Amended Complaint, p. 2, 3.  McIntosh further states, without elaboration, that his Fourth, Fifth, Eighth and Fourteenth Amendment rights have been violated.  <u>Id.</u> at p. 3.  McIntosh attached two exhibits to the Amended Complaint: (1) a copy of the Union's Constitution and By-Laws and (2) a copy of a letter dated September 12, 2012 from Brousseau to McIntosh.  Docket Nos. 9-3, 9-4.

McIntosh alleges that from the period from 2008 to September 17, 2012, he constantly brought grievances to the attention of defendant Brousseau, who is the President of the Union.  <u>Id.</u> at p. 1.  Brousseau did not do anything about McIntosh's grievances and strung him along

---

[3]  The Court takes the facts from the Amended Complaint.  Docket No. 9-2.  As explained below, the Court is recommending that the District Court allow McIntosh's motion to amend the complaint because McIntosh could have amended the Complaint as of right, pursuant to Rule 15(a)(1), and the Defendants do not oppose amendment.  <u>See</u> Docket No. 13 at 1, n. 1. Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in the Plaintiff's favor.  <u>See</u> <u>Morales-Tañon v. Puerto Rico Electric Power Authority</u>, 524 F.3d 15, 17 (1st Cir. 2008).

until the statute of limitations had run.  Id.  McIntosh alleges that he was "bullied out" of the Union.  Id.

McIntosh alleges that in 2008, he worked for Commercial Roofing for a very short period.  Id. at p. 3.  The work environment was so hostile that it became unbearable.  Id. In 2010, McIntosh worked for "Gilbert and Becker and Feeley, McAnespie" for a very short duration.  Id. at p. 2.  The work environment was also very hostile and unbearable.  In 2011, McIntosh did not work through the Union.  Id.  McIntosh states that in 2012, he was discriminated against in the job referral process until September 17, 2012 when the National Labor Relations Board got involved.  Id.

III.    ANALYSIS

A.    Motion To Amend The Complaint

McIntosh filed a motion to amend the Complaint.  Docket No. 9.  Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of right "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  McIntosh filed his motion to amend on October 15, 2012, before the Defendants filed their motion to dismiss in this case.  Therefore, he could have amended his complaint as of right.  In addition, the Defendants do not object to the motion to amend.  See Docket No. 13 at 1, n. 1.  Accordingly, this Court recommends that the District Court grant McIntosh's motion to amend the Complaint.

B.      Motion to Remand To State Court And Motion Objecting To Removal

McIntosh has moved to remand this case back to state court.  Docket Nos. 8, 14.  Only state court actions that originally could have been brought in federal court are subject to removal by a defendant.  See 28 U.S.C. § 1441(b); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1331, federal courts have jurisdiction over cases where a federal question is presented on the face of the plaintiff's complaint – a doctrine commonly referred to as the "well-pleaded complaint rule."  BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of Am., 132 F.3d 824, 831 (1st Cir. 1997).

The doctrine of complete preemption operates as a corollary to the well-pleaded complaint rule.  Caterpillar, 482 U.S. at 393 (citation omitted).  "Where it applies, complete preemption converts an ordinary state law claim into a federal claim for purposes of the well-pleaded complaint rule."  DiGiantommaso v. Globe Newspaper Co., Inc., 632 F. Supp. 2d 85, 88 (D. Mass. 2009) (citing Caterpillar, 482 U.S. at 393).

Complete preemption can occur by operation of the so-called duty of fair representation.  BIW Deceived, 132 F.3d at 830.  A union acting in its representative capacity has "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  Vaca v. Sipes, 386 U.S. 171, 177 (1967).  The duty derives from the union's status as the exclusive bargaining agent and therefore implicates Section 9(a) of the National Labor Relations Act (the "NLRA").  BIW Deceived, 132 F. 3d at 830.  "A complaint that states a [duty of fair representation] claim 'allege[s] a breach by the Union of a duty grounded in federal statutes and . . . federal law therefore governs the cause of action."  Id. (citation omitted).  "Consequently,

6

state law is preempted whenever a plaintiff's claims invokes rights derived from a union's duty of fair representation." Id. (citation omitted).

Complete preemption is also applied where a plaintiff asserts claims dependent on the meaning of a collective bargaining agreement and therefore covered by Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185(a). Id. at 829-830. Section 301 grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Section 301 preempts a state law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). A state law claim "can depend upon the meaning of a collective bargaining agreement in either of two distinct ways: on the one hand, a claim can allege the violation of a duty that arises from the [collective bargaining agreement] itself, or, on the other hand, a claim can require a court to interpret a specific provision of the [collective bargaining agreement]." BIW Deceived, 132 F.3d at 829-830. If a state law claim depends upon the meaning of a collective bargaining agreement in either of these ways, then it is preempted. Id. at 830.

Preemption, however, does not apply to all labor disputes that are cast as state law claims. See Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999). For example, "mere parallelism between a state law claim and a federal contract claim does not necessarily require state court interpretation of the [collective bargaining agreement]–that is, as long as the state claim can be resolved without construing the agreement itself, it is not preempted by Section 301." Id. The consultation of a collective bargaining agreement in the course of litigating a state law claim is not sufficient to establish preemption. See Livadas v. Bradshaw,

512 U.S. 107, 124 (1994).  "Courts confronted with state law claims must therefore locate the line between the need for mere consultation of a [collective bargaining agreement], which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims."  Lydon, 175 F.3d at 10.

Here, although McIntosh's Amended Complaint is difficult to understand, it is reasonably clear that his claims "invoke rights derived from a union's duty of fair representation."  BIW Deceived, 132 F.3d at 830.  Interspersed throughout the Amended Complaint are allegations that the Defendants discriminated against McIntosh in the job referral process, breached the membership contract and breached their duty of fair representation.  See Docket No. 9-2.  The Amended Complaint also contains claims that McIntosh "was not . . . treated as a member of the union to which [he] pay[s] dues," and that the Union made decisions of "an arbitrary nature, discriminatory, and in bad faith."  Docket No. 9-2 at 2, 3.

In addition, at least some of McIntosh's claims are preempted by Section 301 of the LMRA.  For example, McIntosh alleges breach of contract claims.  McIntosh specifically alleges that the Defendants breached the Union's membership contract and the collective bargaining agreement.  Docket No. 9-2 at 1, 2, 3.  Accordingly, McIntosh's claims depend on an interpretation of the Union's collective bargaining agreement, its constitution and bylaws, or both, and are preempted by Section 301.

Whether the rest of McIntosh's claims is preempted is difficult to ascertain on the record available to the Court.  In order to determine whether a plaintiff's claims are preempted, the Court must analyze the specific nature and elements of the state law claim.  See Acciavatti v. Professional Servs. Group, Inc., 982 F. Supp. 69, 74 (D. Mass. 1997) (citing Allis-Chalmers v.

8

Lueck, 471 U.S. 202, 214 (1985)).  Here, McIntosh's claims consist of conclusory allegations and labels so it is difficult to ascertain the true nature of his claims.  For example, McIntosh appears to be alleging a negligence claim.  See Docket No. 9-2 at 3.  A negligence claim can survive Section 301 preemption only if the Union acted "in a way that might violate the duty of reasonable care owed to every person in society."  Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) (citation omitted); BIW Deceived, 132 F.3d at 833 (citation omitted).  In this claim, McIntosh appears to be asserting that the Union was negligent in providing bad information about a job opportunity with the MBTA and in referring McIntosh to a job with Reliable Roofing.  See Docket No. 9-2 at 2-3.  So interpreted, any duty that the Union violated likely arose from the collective bargaining agreement and, as such, is preempted by Section 301.

McIntosh's claim for intentional infliction of emotional distress also appears to be preempted.  To prevail on that claim, McIntosh would have to prove that the Defendants "(1) intended to inflict emotional distress by (2) undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe."  Flibotte, 131 F.3d at 27 (citations omitted).  "Under Massachusetts law, 'extreme and outrageous conduct' is behavior that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Id. (citation omitted).  The Defendants' rights and obligations under the collective bargaining agreement and/or the Union's constitution and bylaws are central to the inquiry of the Defendant's intentions as well as to whether they conducted themselves in a sufficiently outrageous manner to give rise to liability under state law.  See id.

McIntosh's slander claim is also likely preempted.  The LMRA preempts state law defamation actions unless the allegedly defamatory statements were made with actual malice and the plaintiff suffered actual harm.  Intercity Maintenance Co. v. Local 254, Service Employees Int'l Union, 241 F.3d 82, 89 (1st Cir. 2001).  The Amended Complaint only contains conclusory allegations that the conduct of the Union was malicious, and those statements are not connected to any allegations regarding defamation.  The Amended Complaint also fails to allege that McIntosh suffered actual harm as the result of any slanderous statements.

In any event, having found that at least some of McIntosh's claims are completely preempted by federal law, the Court need not analyze all of McIntosh's claims to determine whether this case was properly removed to federal court.  "A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts."  BIW Deceived, 132 F.3d at 833 (citations omitted).  Therefore, removal was proper and the Court recommends that the District Court deny McIntosh's motion to remand this case to state court and his motion objecting to removal.[4]

C.   Motion Entering Judgment In Favor Of Plaintiff

McIntosh filed a motion seeking that the District Court "enter a judgment in favor of the plaintiff."  Docket No. 16.  In that motion, McIntosh seeks entry of judgment in his favor because the Defendants have not answered the Amended Complaint.  However, a motion to

---

[4] The Amended Complaint alleges that the Defendants violated McIntosh's Fourth, Fifth, Eighth and Fourteenth Amendment rights.  Although not clear from the face of the Amended Complaint, McIntosh also later clarified that he is attempting to bring claims under the NLRA and the LMRA.  See Docket No. 20.  Any such claims arise under federal law, also making removal of this case proper.

dismiss pursuant to Rule 12 may be filed in lieu of an answer, see Karim v. Bank of Am., N.A., No. CA 10-519 S, 2011 WL 4457212, at *11-12 (D.R.I. May 6, 2011), and if such a motion is filed, the time for answering the complaint is tolled until fourteen days after the court denies the motion. Fed. R. Civ. P. 12(a)(4)(A).

Here, the Defendants removed this case to this Court on October 1, 2012. Docket No. 1. That same day, the Defendants filed a motion for extension of the time to file an answer or otherwise respond to the Complaint until October 30, 2012. Docket No. 4. The District Court granted the motion for an extension of time on October 4, 2012. Docket No. 5. On October 29, 2012, the Defendants filed their motion to dismiss the Amended Complaint. Docket No. 12. That motion remains pending. Accordingly, this Court recommends that the District Court deny McIntosh's motion for entry of judgment in his favor.[5]

D.     Defendants' Motion To Dismiss

Defendants move to dismiss McIntosh's Amended Complaint on several grounds. First, the Defendants argue that McIntosh's claims are barred by the doctrine of res judicata. Docket No. 13 at 3-6. Second, the Defendants argue that federal labor law preempts all of McIntosh's

---

[5] In addition to seeking entry of judgment in his favor, Plaintiff repeats his argument that this case should be remanded to state court. The Court has already addressed that argument in Section III(B) above.

McIntosh also appears to seek leave to file a Second Amended Complaint. Docket Nos. 16-1, 16-3. The proposed Second Amended Complaint is largely identical to the Amended Complaint. The only difference appears to be that the Second Amended Complaint no longer includes any claim that McIntosh's constitutional rights have been violated. Defendants request that the District Court apply the Defendants' motion to dismiss to the Second Amended Complaint. Docket No. 19 at 4. In deciding the Defendants' motion to dismiss, this Court analyzes the Amended Complaint. In any event, as set forth below, neither version of the Complaint states a plausible claim for relief.

claims.  Id. at 6-11.  Third, the Defendants argue that, to the extent McIntosh is alleging discrimination under Massachusetts law, Title VII and/or the American with Disabilities Act ("ADA"), the District Court lacks subject-matter jurisdiction because the Plaintiff did not first file a complaint at the Massachusetts Commission Against Discrimination ("MCAD") or the Equal Employment Opportunity Commission ("EEOC").  Id. at 11.  Finally, the Defendants argue that McIntosh's Amended Complaint fails to state a plausible claim for relief.  Id. at 12-17. Although the Court disagrees with some of the Defendants' arguments, it ultimately finds that McIntosh's Amended Complaint is subject to dismissal.

       1.     <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  <u>Pro se</u> pleadings are to be liberally construed.  <u>Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1991).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

    2.   Res Judicata

Defendants first argue that McIntosh's claims are barred by the doctrine of res judicata or claim preclusion based on the District Court's dismissal of McIntosh's claims in McIntosh I. Docket No. 13 at 3-6. This Court finds that, to the extent McIntosh brings claims under the NLRA and LMRA, those claims are barred by the doctrine of claim preclusion. His state law claims are not so barred.

Federal common law governs the application of claim preclusion where, as here, an earlier federal judgment's preclusive effect is at stake. Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005) (citations omitted). "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." Id. (citation omitted).

In order to claim preclusion to apply, three factors must be present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of the parties or privies in the two suits." Id. at 127 (citation omitted). Here, there can be no dispute that the second two elements are met. The potential NLRA and LMRA allegations in the Amended Complaint are almost identical to the allegations

in <u>McIntosh I</u>.  <u>Compare</u> Docket No. 9-2 <u>with</u> <u>McIntosh I</u>, Docket Nos. 1, 8-2.  The parties in

both actions are also the same.

The Court finds that the dismissal of <u>McIntosh I</u> was on the merits with respect to

McIntosh's federal claims but not the state law claims.  The District Court ruled that McIntosh's

federal law claims were barred by the statute of limitations.  <u>McIntosh I</u> at Docket No. 16, p. 2.

The District Court, however, found that it did not have jurisdiction over the pendant state law

claims and dismissed them without prejudice.  <u>Id.</u>  A dismissal without prejudice is not on the

merits and has no preclusive effect.  <u>See</u> <u>Melnitzky v. Jones</u>, No. 07-CV-7380, 2008 WL

3884361, at *6 (S.D.N.Y. Aug. 21, 2008).  Accordingly, the Court finds that the doctrine of res

judicata bars any federal law claims,[6] but not McIntosh's state law claims.

3.      Preemption

The Defendants argue that federal labor law preempts McIntosh's state law and common

law claims.  Docket No. 13 at 6-11.  As discussed in Section III(B) above, Defendants are

correct that most of McIntosh's claims are preempted by NLRA and Section 301 of the LMRA.

_____

[6] The Court recognizes that in affirming the District Court's decision dismissing McIntosh's claims on statute of limitations grounds, the First Circuit noted that its opinion did not preclude McIntosh from pursuing claims for conduct occurring subsequent to the actions alleged in <u>McIntosh I</u>.  <u>See</u> <u>McIntosh I</u>, Docket No. 24.  In the Amended Complaint in this action, McIntosh includes a heading stating "[f]rom 2008 to 9/17/12."  Docket No. 9-2 at 1.  However, most of the allegations following that heading appear to arise from the same conduct alleged in <u>McIntosh I</u>.  <u>Compare</u> McIntosh I, Docket No. 8-2 at ¶ 5 <u>with</u> Docket No. 9-2 at 1.  McIntosh also alleges that "[i]n 2012 I was discrimination [sic] against in the job referral process, breach of contract, breach of membership contract, until 9/17/2012 when the N.L.R.B. got involved for the second time."  Docket No. 9-2 at 2.  In addition, he alleges that in 2011, he "did not work through the union hiring hall, nor did anyone call [him] for work if my recollection serves me correctly."  Even if these allegations refer to conduct that occurred after the filing of the Complaint in <u>McIntosh I</u>, they are too vague and conclusory and, therefore, do not meet the <u>Twombly</u> standard.

In any event, as discussed below, even if McIntosh's state law and common law claims were not preempted by federal law, he has failed to state a plausible claim for relief.

       4.      <u>McIntosh's Amended Complaint Fails To State A Plausible Claim For Relief</u>

Upon review of the Amended Complaint, this Court cannot discern any plausible claims upon which relief may be granted.  The Amended Complaint's allegations consist of unnumbered paragraphs filled with labels and conclusory statements.  Indeed, in most instances, McIntosh merely names the purported cause of action.  Such allegations fail to state any viable claims.  For example, McIntosh states several times that he brings breach of contract and breach of membership agreement claims.  However, he does not state what provisions of what contracts were breached or what conduct constituted the breach.  McIntosh also states that he is bringing an intentional infliction of emotional distress claim but he has failed to plead the requisite intent, what conduct on the part of the defendants was outrageous, or any facts to support that he suffered severe emotional distress as a result.  <u>See</u> <u>Flibotte</u>, 131 F.3d at 27 (in order to state intentional infliction of emotional distress claim, plaintiff must show that defendants "(1) intended to inflict emotional distress by (2) undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe.").

McIntosh also purports to assert a claim for fraud.  To state a claim of fraud under under Massachusetts law, the plaintiff must show that the defendants "made a false representation of a material fact with knowledge of its falsity for purposes of inducing the plaintiff to act thereon, and that the plaintiff actually relied on the representation." <u>Platten v. HG Bermuda Exempted, Ltd.</u>, 437 F.3d 118, 132 (1st Cir. 2006) (citing <u>Slaney v. Westwood Auto, Inc.</u>, 366 Mass. 688 (1975)).  In addition, pursuant to Rule 9(b), a party must state "with

particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Rule 9(b) requires that

a plaintiff's averments of fraud "specify the time, place, and content of the alleged false or

fraudulent representations." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360

F.3d 220, 226 (1st Cir. 2004) (abrogation on other grounds recognized by U.S. ex rel Gagne v.

City of Worcester, 565 F.3d 40 (1st Cir. 2009)).  The purpose of this requirement is to "give

notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be

harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits

that simply hope to uncover relevant information during discovery." Id. (quoting Doyle v.

Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).  McIntosh has not alleged at all, let alone with

particularity, any facts supporting a fraud claim.

Similarly, the Amended Complaint fails to state a claim for slander or defamation.  "The

elements of a defamation claim include (1) a false and defamatory communication (2) of and

concerning the plaintiff which is (3) published or shown to a third party." Kibbe v. Potter, 196

F. Supp. 2d 48, 74 (D. Mass. 2002) (citations omitted).  In addition, like fraud, defamation

claims must be pled with specificity. Id.  In order to survive a motion to dismiss, the plaintiff

must plead "(1) the general tenor of the libel or slander claim, along with the precise wording of

at least one sentence of the alleged defamatory statement(s); (2) the means and approximate

dates of publication; and (3) the falsity of those statements." Id. at 74-75 (citation omitted).

McIntosh has not alleged any of the elements for a defamation claim.

McIntosh makes repeated references to "discrimination" in the Amended Complaint.

The Defendants appear to construe those references as an attempt to bring claims under Title

VII, the ADA, and Massachusetts discrimination laws. See Docket No. 13 at 11.  However,

McIntosh has not even alleged that he is a member of a protected class or that he is a qualified individual with a disability.  See, e.g., Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 148 (D. Mass. 2011) (in order to state claim under both Title VII and Massachusetts discrimination law, plaintiff must show that he is a member of a protected class); Bryant v. Caritas Norwood Hosp., 345 F. Supp. 2d 155, 163 (D. Mass. 2004) (in order to state claim under ADA, plaintiff must show that he is a qualified individual with a disability).  Accordingly, to the extent that he intended to bring claims under Title VII or the ADA, those claims are also subject to dismissal.[7]

Finally, McIntosh states that his Fourth, Fifth, Eighth and Fourteenth Amendment rights have been violated but he fails to plead any facts to support any such claims.  Although pro se pleadings are liberally construed, the burden is on McIntosh to set forth plausible claims upon which relief may be granted and to provide sufficient notice to the Defendants of his claims.  Ateek v. Massachusetts, No. 11-11566-DPW, 2011 WL 4529393, at *3 (D. Mass. Sept. 27, 2011) (citing to Rule 8 of the Federal Rules of Civil Procedure).  The Court cannot fashion claims for McIntosh.  "District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments."  Id. at *3 n. 7 (quoting Terrance v. Cuyahoga Cnty., No. 1:05 CV 1926, 2005 WL 2491531, at * 1 (N.D. Ohio Oct. 7, 2005)).  Such an exercise by the court would "require . . . [the courts] to explore exhaustively all potential claims of a pro se plaintiff, . . . [and] would . . . transform the district

---

[7] The Defendants also correctly point out that as a prerequisite to filing suit in federal court for violations of Title VII and the ADA, an aggrieved person must file a complaint with the EEOC, and for a complaint arising under Massachusetts law, with the MCAD.  See, e.g., Alston v. Massachusetts, 661 F. Supp. 2d 117, 122 (D. Mass. 2009) (a plaintiff must file a charge with the MCAD or EEOC before discrimination claims may be asserted in court); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999).  McIntosh has not pled that he has complied with this requirement.

court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. "The failure to identify a particular legal theory . . . places an unfair burden on the defendant to speculate on the potential claims that plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action." Id. Accordingly, this Court finds that McIntosh's Amended Complaint is subject to dismissal.

## IV.   RECOMMENDATION

For the foregoing reasons, I recommend that the District Court grant McIntosh's motion to amend the Complaint (Docket No. 9); deny McIntosh's motions to remand and objecting to removal (Docket Nos. 8, 14); deny McIntosh's motion entering judgment in his favor (Docket No. 16); grant the Defendants' motion to dismiss (Docket No. 12); and dismiss the Amended Complaint.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

<u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d

343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge